UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
CARLOS PIEDRA, *individually and on behalf*
*of all others employees similarly situated*,

                              Plaintiffs,

                -against-                                    **REPORT AND**
                                                            **RECOMMENDATION**
ECUA RESTAURANT, INC. d/b/a "La Bamba                       17 CV 3316 (PKC) (CLP)
Restaurant,"   BLANCA   O  GUALLPAAKA,
a/k/a "Blanca Chauca," LOUIS PEREZ, and
DAVID SIGCHA,

                              Defendants.
-------------------------------------------------------- X

**POLLAK**, United States Magistrate Judge:

On June 1, 2017, plaintiff Carlos Piedra commenced this action on behalf of himself and

other similarly situated employees (collectively, "plaintiffs") against defendants Ecua

Restaurant, Inc., d/b/a La Bamba Restaurant, Blanca O Guallpaaka, a/k/a Blanca Chauca, Louis

Perez, and David Sigcha (collectively, "defendants"), seeking unpaid overtime wages pursuant to

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law

("NYLL") § 650 et seq., as well as unpaid spread of hours wages, and damages stemming from

defendants' alleged failure to comply with the wage notice and pay stub requirements under the

NYLL.

Despite proper service, defendants failed to answer or otherwise respond to the

Complaint.  On July 10, 2017, plaintiff requested entry of a Certificate of Default against each

defendant (Pl.'s 7/10/2017 Request for Certificate of Default, ECF No. 7), and on July 21, 2017,

the Clerk of Court entered Certificates of Default against each defendant.  (Clerk's Electronic

Entry of Default).  Thereafter, on August 8, 2017, plaintiff moved for a Default Judgment against

defendants (Pl.'s 8/2/2017 Mot. for Default J., ECF No. 8), which the Honorable Pamela K.

Chen referred to the undersigned on August 7, 2017 to issue a Report and Recommendation as to damages. The Court Ordered the parties to appear at an inquest hearing on October 3, 2017. (See Scheduling Order, Aug. 14, 2017, ECF No. 13). At the inquest, plaintiff gave testimony with respect to his damages. (See generally Minute Entry, Oct. 3, 2017, ECF No. 16; Transcript, Oct. 3, 2017, ECF No. 17). Despite receiving notice of the hearing, defendants failed to appear. (See id.)

For the reasons set forth below, the Court respectfully recommends that the motion for default judgment be granted, and that plaintiff Piedra be awarded a total of $140,122.63 in damages, attorney's fees, and costs.

## FACTUAL BACKGROUND

Defendant Ecua Restaurant ("Ecua" or the "Restaurant") is a restaurant located at 4761 47th Street, Woodside, New York. (Compl.[1] ¶ 8). Defendants Blanca O Guallpaaka, a/k/a Blanca Chauca ("Chauca"), Luiz Gonzalez, and David Sigcha are alleged to be the owners, officers, directors, and/or managing agents of the Restaurant. (Id. ¶¶ 13, 15, 17). According to the Complaint, the defendants own the stock of the Restaurant; they manage and make all business decisions relating to the Restaurant and participate in the day-to-day operations, including determining salary and hours worked for the employees. (Id. ¶¶ 13-18). Plaintiff alleges that Ecua and the three individual defendants, Chauca, Gonzalez and Sigcha, were all employers within the meaning of the FLSA and NYLL. (Id. ¶¶ 13, 15, 17).

Plaintiff Carlos Piedra is a resident of the State of New York, residing in Queens, who began working for defendants in or around November 9, 2015. (Compl. ¶ 7; Piedra Decl.[2] ¶ 2).

---

[1] Citations to "Compl." refer to the Complaint, filed on April 4, 2016, ECF No. 1.

[2] Citations to "Piedra Decl." refer to the Declaration of Carlos Piedra, filed on August 2,

Piedra worked at the Restaurant through May 9, 2017 as a cook, dish washer, and kitchen prep worker.  (Compl. ¶¶ 7, 25; Piedra Decl. [3] ¶ 2).  Piedra alleges that from November 9, 2015 to May 9, 2016, he worked seven days per week:  Monday, from 8:00 a.m. until 3:00 p.m.; Tuesday, Wednesday and Thursday, from 9:00 a.m. until 10:00 p.m.; and Friday, Saturday and Sunday, from 9:00 a.m. until 11:00 p.m.  (Compl. ¶ 26; Piedra Decl. ¶ 3).  He claims that he worked approximately 88 hours per week and received a flat weekly pay of $800.  (Compl. ¶ 26; Piedra Decl. ¶ 3).  Piedra claims that he worked 48 hours of overtime per week.  (Piedra Decl. ¶ 3).

Piedra claims that from May 10, 2016 until January 31, 2017, he worked essentially the same schedule, working seven days per week:  Monday, from 8:00 a.m. until 3:00 p.m.; Tuesday, Wednesday and Thursday, from 9:00 a.m. until 10:00 p.m.; and Friday, Saturday and Sunday from 9:00 a.m. until 11:00 p.m.  (Compl. ¶ 27; Piedra Decl. ¶ 4). However, for this period of his employment, he was paid a fixed weekly wage of $900.  (Compl. ¶ 27; Piedra Decl. ¶ 4).

Starting February 1, 2017 until May 9, 2017, the last day of his employment, plaintiff claims that he worked the following schedule:  Tuesdays, Wednesdays, Thursdays, and Fridays from 3:00 p.m. until 10:00 p.m., Saturdays from 9:00 a.m. until 12:00 a.m., and Sundays from 10:00 a.m. until 12:00 a.m.  (Compl. ¶ 28; Piedra Decl. ¶ 5).  During this time period, Piedra claims that he worked on average 58 hours per week and received $13.00 per hour.

Plaintiff alleges that during his time working for the Restaurant, he was not paid time and a half for the hours worked over 40, nor was he paid spread of hours pay when he worked over ten hours in a day.  (Compl. ¶¶ 29, 35; Piedra Decl. ¶¶ 6, 7).  Plaintiff also alleges that when he

---

2017, ECF No. 10.

[3]Although the Complaint states that Piedra performed other jobs, Piedra's Declaration simply states that he was a "cook."  (<u>Compare</u> Compl. ¶ 7 <u>with</u> Piedra Decl. ¶ 2).

was hired, he did not receive a notice containing the rates of pay and basis of pay, nor was he provided with pay stubs on or after his payday.  (Compl. ¶¶ 30, 37; Piedra Decl. ¶¶ 8, 9).

The Complaint contains five causes of action:  1) claims for FLSA overtime compensation violations (Compl. ¶¶ 48-55); 2) claims for overtime violations under NYLL (id. ¶¶ 56-59); 3) claims for unpaid spread of hours wages (id. ¶¶ 61-62); 4) a claim under NYLL § 195(1) for wage notice violations (id. ¶¶ 64-65); and 5) a claim under NYLL § 195(3) for wage statement violations (id. ¶¶ 67-69).

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on June 1, 2017.  Defendant Ecua was served on June 6, 2017 by service upon the owner Chauca, who is allegedly authorized to accept service on behalf of the corporation.  (See Mendez Decl.[4] ¶ 20).  According to the Declaration of Paul Mendez, Chauca was personally served at Ecua Restaurant on June 6, 2017.  (Id. ¶ 21; Ex. 2).  On July 21, 2017, when neither of the defendants had responded to the Complaint, the Clerk of Court entered defaults against them.  (Id. ¶  22, Ex. 3).  Plaintiff then filed the instant motion for default judgment on August 2, 2017.

On August 7, 2017, the Honorable Pamela K. Chen referred the motion to the undersigned to prepare a Report and Recommendation as to damages.  An inquest hearing was held on October 3, 2017, at which plaintiff's counsel indicated that he was only seeking to proceed against the Ecua Restaurant and defendant Chauca, and that he would withdraw the claims against the other defendants.  (See Minute Entry, Oct. 3, 2017, ECF No. 16; Tr.[5] 2:10-

---

[4] Citations to "Mendez Decl." refer to the Declaration of Paul Mendez, Esq. In Support of Motion for Default Judgment, dated August 2, 2017, ECF No. 9.

[5] Citations to "Tr." refer to the Transcript of the October 3, 2017 Inquest Hearing, filed on November 6, 2017, ECF No. 17.

3:9).  Plaintiff filed a Notice of Voluntary Dismissal with respect to Louis Perez and David

Sigcha on November 8, 2017.  (See Notice of Voluntary Dismissal, Nov. 8, 2017, ECF No. 18).

DISCUSSION

**A.  Entry of Default**

    1.  Legal Standard

      Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of

a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First,

the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's

default on the docket maintained by the Clerk.  See id.; Fed R. Civ. P. 55(a) (providing that

"[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default").  Second, after the Clerk of Court enters a default against a party, if that party

fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may

enter a default judgment.  See Fed. R. Civ. P. 55(b).

      The Second Circuit has cautioned that default judgment is an extreme remedy, and

therefore should be entered only as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d

Cir. 1981).  Although the Second Circuit has recognized the "push on a trial court to dispose of

cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its

calendar," it has held that district courts must balance that interest with the responsibility to

"[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at

95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default

judgments are "generally disfavored," and all doubts should be resolved in favor of the

defaulting party.  Id.  Thus, a plaintiff is not entitled to a default judgment and any concomitant

5

damages as a matter of right simply by virtue of a defendant's procedural default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]."  Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing his entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  Upon entry of default, defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or

allegations relating to damages.  Id.; Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013).  It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted.  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  In determining whether the plaintiff has met that burden, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor.  Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After establishing each defendant's liability, the plaintiff must also demonstrate his entitlement to damages to a "reasonable certainty."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  Although "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  In the context of a motion for default judgment to recover damages for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83-84.

2.  Service of Process

Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant.  See Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (explaining that proper service on a defendant of a summons and complaint is a

prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction.  See Fed. R. Civ. P. 4.  Thus, it is well established that a failure to demonstrate that the summons and complaint were properly served on a defendant bars the entry of a default judgment.  See, e.g., Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); Cowder v. Administration for Children & Families, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment).

Rule 4(e)(1) provides, however, that a party may effect service by "following state law . . . [of] the state where the district court is located."  Fed. R. Civ. P. 4(e)(1).  Thus, in this case, service may also be deemed proper if plaintiff has complied with New York law.  Here, defendants have not indicated any intention to waive service; thus, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4.

The technical requirements of Rule 4 notwithstanding, courts have recognized that the fundamental purpose of service is to give defendants notice of the claims against them; due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950)).  At its core, this standard is one of reasonableness.  Id.  Thus, courts will deem valid

efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the

litigation and relevant documents.  See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167,

2004 WL 1110419, at *6-7 (S.D.N.Y. May 18, 2004).

a. Service on the Individual Defendants

Under Rule 4 of the Federal Rules of Civil Procedure, a natural person may be served

personally by "delivering a copy of the summons and of the complaint to the individual

personally" or by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of

abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P.

4(e)(2)(A), (B).

In this case, the affidavit of the process server, Avner Rahimov, states that Blanca O

Guallpa, a/k/a Blanca Chauca, was personally served at the Ecua Restaurant at 4761 47th Street,

Woodside, N.Y. on June 7, 2017.  (See Returns of Service at 1-2, June 8, 2017, ECF No. 6;

Mendez Decl., Ex. 2).

Thus, the Court finds that, based on the affidavit of the process server, service upon the

individual defendant Blanca O Guallpa complied with New York law and the Court may exercise

personal jurisdiction over this defendant.

b. Service on the Corporate Defendant

According to Rule 4, "[u]nless federal law provides otherwise or the defendant's waiver

has been filed, a domestic . . . corporation . . . [may] be served . . . by delivering a copy of the

summons and of the complaint to an officer, a managing or general agent, or any other agent

authorized by appointment or by law to receive service of process and – if the agent is one

authorized by statute and the statute so requires – by also mailing a copy of each to the

9

defendant." Fed. R. Civ. P. 4(h)(1)(B)

Service upon a corporation may also be effected in any manner authorized by state law for service. Fed. R. Civ. P. 4(e), (h). New York law provides that service upon a corporation may be made by delivering the summons and a copy of the pleadings to "an officer, director, managing or general agent, or cashier, or assistant cashier, or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). Service upon a corporation may also be made in compliance with Section 306 of the N.Y. Business Corporation Law, which provides that:

> service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering [all necessary documents] to . . . the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany . . . . Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. Law § 306(b)(1). Thus, a corporation registered to do business in New York may also be served by proper service upon the New York Secretary of State.

The affidavit of the process server, Avner Rahimov, establishes that Ecua Restaurant, Inc., d/b/a La Bamba Restaurant, was served on June 7, 2017 at 3:20 p.m. by delivering a copy of the Summons and Complaint to Blanca Chauca, an owner of the Restaurant. (See Returns of Service at 1; Mendez Decl., Ex. 2).

Based on the affidavit of the process server and the registered address of the corporate defendant, the Court finds that Ecua Restaurant, Inc. was served by delivery of the Summons and Complaint to Ms. Chauca, an owner of the Restaurant, in compliance with N.Y. Bus. Corp. Law § 311(a)(1) and Fed. R. Civ. P. 4(h)(1)(B).

3.  Default Determination

Defendants Ecua and Chauca did not appear in this action and failed to answer or otherwise respond to the Complaint.  The corporate defendant Ecua also never obtained counsel through which to appear, and such a failure of a corporate defendant to obtain counsel constitutes a failure to defend because a corporation cannot proceed *pro se* in federal court.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (observing that "it is settled law that a corporation cannot appear other than by its attorney"); see also Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear only through counsel).  Each of those failures constitutes a default.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (E.D.N.Y. Oct. 19, 1992).

The filings in this matter demonstrate that each of the defendants was properly served.  It is evident that each defendant failed to plead or otherwise defend, and the Clerk of the Court properly entered each party's default as he was required to do.  See Fed. R. Civ. P. 55(a) (providing that where a party fails to plead or otherwise defend, and that failure is demonstrated by affidavit or other showing, "the clerk must enter the party's default").  Furthermore, the Court has not been presented with any reasons to justify delaying this action further.  The Court therefore turns to the issues of liability and damages that must be addressed prior to entry of default judgment.  See Fed. R. Civ. P. 55(b)(2).

**B. Liability**

Plaintiff asserts causes of action under the FLSA and the NYLL, seeking damages for unpaid overtime, spread of hours wages, and wage notice violations, from November 9, 2015 until May 9, 2017.  Each of these claims is addressed below.

1. Liability Under the FLSA

To succeed on a claim under the FLSA, plaintiff must prove that (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.[6]  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

a. Employer Subject to the FLSA

An employer is subject to the overtime provisions of the FLSA if either (1) its employees are "engaged in commerce" or (2) the employer is an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207; see also Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009).  A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

---

[6] Exemptions from the FLSA are narrowly construed, and "an employer bears the burden of proving that its employees fall within an exempted category of the Act."  Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (citation omitted).  Thus, in the context of default judgment, the third prong generally will be satisfied so long as the applicability of an exemption is not pleaded by plaintiff or established by materials presented to the Court in connection with the motion for default judgment.  (See infra note 7).

29 U.S.C. § 203(s)(1)(A)(i)-(ii).  The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively.  Jacobs v. New York Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

Individual coverage is established where the employees themselves are "engaged in commerce."  In determining whether this is the case, courts examine the employment actions of each employee asserting a claim.  Padilla v. Manlapaz, 643 F. Supp. 2d at 300.  Enterprise coverage, on the other hand, exists where an employer:  (1) has employees engaged in commerce or in the production of goods for commerce; and (2) has an annual gross volume of sales greater than $500,000.00.  29 U.S.C. § 203(s)(1)(A).

Here, plaintiff alleges that defendants were engaged in interstate commerce at all times relevant to their claims in this litigation, that they employed more than two employees, and produced gross annual sales exceeding $500,000.  (Compl. ¶¶ 9, 19).  Plaintiff also alleges that defendants were employers "engaged in interstate 'commerce' and/or in the production of 'goods' for 'commerce,' within the meaning of" the FLSA.  (Id. ¶ 10).  In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage.  See, e.g., Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State").

Thus, accepting these allegations as true, as the Court must in the context of a default, the Court finds that plaintiff has alleged sufficient facts to establish that defendant Ecua qualifies as an employer under the FLSA.

b. Individual Employer Doctrine

This action was brought against defendant Ecua and the individually named defendant Blanca Chauca.  Plaintiff alleges that during his employment at Ecua, Chauca was an owner, manager, principal, agent and stockholder of defendant Ecua, and that she participated in the day-to-day operations of the Restaurant, making all business decisions, including the amount of salary the employees were to receive and the number of hours they were to work.  (Compl. ¶¶ 14, 15).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"  29 U.S.C. § 203(d).  "Person" means "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  Thus, an individual may be held liable as an employer under the FLSA so long as he or she exercises "operational control" over the employee in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and any individuals who are found to qualify as "employers" under the FLSA may be held jointly and severally liable to the plaintiff along with any corporate employer.  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Based on the allegations in the Complaint, the Court finds that plaintiff states a claim against Blanca Chauca as an "employer" within the meaning of the FLSA.  Thus, if the Court finds that plaintiff is owed damages under the FLSA, Ecua and Chauca will be jointly and severally liable to plaintiffs.

c. Employees Within the Meaning of the FLSA

Under the FLSA, an "employee" is "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  The FLSA

covers both "employees who in any workweek [are] engaged in commerce or in the production

of goods for commerce" and those persons who are "employed in an enterprise engaged in

commerce or in the production of goods for commerce[.]"  29 U.S.C. § 206(a).  In determining

whether a plaintiff is an "employee," the "ultimate question is . . . 'whether, as a matter of

economic reality, the worker[] depend[s] upon someone else's business for the opportunity to

render service or [is] in business for [himself].'"  Velu v. Velocity Exp., Inc., 666 F. Supp. 2d

300, 306 (E.D.N.Y. 2006) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc.,

615 F. Supp. 2d 186, 192 (S.D.N.Y. 2009)).

As discussed above, at all relevant times, plaintiff alleges that he was employed by

defendants.  (Compl. ¶ 7).  Plaintiff further alleges that his hours, rate of pay, and method of

compensation were controlled by defendants.  (Compl. ¶¶ 13, 14, 19).  Additionally, the Court

cannot discern any basis for finding that plaintiff falls within one of the FLSA's exemptions

from minimum wage and overtime requirements.  See 29 U.S.C. § 213(a) (setting forth the

exemptions).[7]  The Court therefore concludes that plaintiff was an employee of Ecua and Chauca

within the meaning of the FLSA.

---

[7]The Court notes that the burden of demonstrating that an employee falls within one of
these exempted categories rests squarely with the employer.  Chen v. Major League Baseball, 6 F.
Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses which an
employer must prove).  Since defendants have defaulted, they have not availed themselves of the
exemptions or any of the affirmative defenses provided by statute.

d. Overtime Claims

Plaintiff alleges that he regularly worked in excess of 40 hours.  (Compl. ¶¶ 26-28; Piedra Decl. ¶¶ 3-5).  Specifically, plaintiff alleges that from November 9, 2015 through January 31, 2017, he typically worked 88 hours per week while employed by defendants.  (Piedra  Decl. ¶¶ 3-4).  During this period, Piedra claims that he was paid a weekly cash wage of $800 per week, which increased to $900 per week on May 10, 2016. (Piedra Decl. ¶¶ 3-4).  Plaintiff alleges that starting on February 1, 2017 and continuing until his employment with the Restaurant terminated, he typically worked 58 hours per week  and was paid $13.00 an hour. (Id. ¶ 5).  Plaintiff alleges that even though he worked more than 40 hours per week, he was never compensated at the overtime rate for the hours worked over 40.  (Id. ¶ 6).

Since defendants are in default, the Court accepts as true plaintiff's uncontroverted allegations as to liability and finds that plaintiff has established the necessary elements to state a claim and to establish liability under the FLSA against both the corporate defendant Ecua and against the individual defendant Blanca O Guallpaaka, a/k/a Blanca Chauca.

2. Liability Under the NYLL

Plaintiff also alleges that defendants violated the NYLL by failing to compensate plaintiff for overtime.  The NYLL and the FLSA are nearly identical in analyzing overtime violations. D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013).  Like the FLSA, the NYLL establishes certain minimum wage rates and requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week pursuant to regulations issued by the New York State Commissioner of Labor upon recommendation by a wage board.  See N.Y. Lab. L. §§ 655-56, 160; 12 N.Y. C.C.R.R. § 142-2.2; see also Noble v. 93 Univ. Place Corp., 303 F.

16

Supp. 2d 365, 376 (S.D.N.Y. 2003).

"The same elements are required to prove plaintiff's claim under [the] New York [L]abor [L]aw as under federal law."  Padilla v. Sheldon Rabin, M.D., P.C., 176 F. Supp. 3d 290, 300 (E.D.N.Y. 2016) (quoting Lewis v. Alert Ambulette Serv. Corp., No. 11 CV 442, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012)).  Thus, to recover under the NYLL, plaintiffs must prove that they were "employees" and that defendants were "employers" as defined by the statute.  Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant have a certain volume of business to meet the definition of an "employer" subject to the law's requirements.  See N.Y. Lab. L. § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").

In determining whether a defendant is an "employer" within the meaning of the NYLL, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee:  "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1095, 770 N.Y.S.2d 692, 695, (2003)).  Just as under the FLSA, corporate and individual employers may be held jointly and severally liable.  See Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14 CV 5665, 2016 WL 1276417, at *3 (E.D.N.Y. Mar. 30, 2016) (citing Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011) (collecting cases)); see also Padilla v. Sheldon Rabin, M.D., P.C., 176 F. Supp. 3d at 301 (observing that courts in the Second Circuit "have interpreted

the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA") (citations omitted).

As in the FLSA context, "employee" is defined broadly by the NYLL as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5). In this case, plaintiff alleges that at all relevant times, he was employed by defendants within the meaning of the FLSA and NYLL. (Compl. ¶ 7). The allegations set forth in plaintiff's Complaint establish that plaintiff was an employee under the NYLL. Plaintiff also sets forth factual allegations sufficient to demonstrate that, in addition to Ecua, defendant Chauca was also plaintiff's "employer" because she determined employees' wages and schedules. (Id. ¶¶ 13-15). Moreover, plaintiff claims that defendants willfully failed to pay overtime pay, or spread-of-hours pay under the NYLL. (Id. ¶ 21). Additionally, plaintiff alleges that defendants failed to provide wage notices as required by the NYLL (id. ¶¶ 21, 64-65); and failed to provide plaintiffs with wage statements when they were paid that listed the hourly rate of pay and overtime pay, as required by the NYLL. (Id. ¶¶ 67-69).

Accordingly, based on these allegations, the Court finds that plaintiff has adequately alleged the elements necessary to state claims against both defendants for various violations of the NYLL.

   3. Statutes of Limitations

    a. FLSA Limitations Period

A cause of action accrues under the FLSA "on the regular payday immediately following the work period for which services were rendered and not properly compensated." Tang v. Wing Keung Enters., Inc., 210 F. Supp. 3d 376, 394 (E.D.N.Y. 2016) (citation omitted). The FLSA generally provides a two-year statute of limitations within which a plaintiff must bring an action

to enforce its provisions, but the period may be extended to three years if the relevant violation is willful.  29 U.S.C. § 255(a); see Tang v. Wing Keung Enters., 210 F. Supp. 3d at 395 (citing Parada v. Banco Indus. de Venezuela, C.A., 753 F.3d 62. 70 (2d Cir. 2014)).

The plaintiff bears the burden of demonstrating that the violations were willful.  See Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531 (2d Cir. 2004).  "A violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  Tang v. Wing Keung Enters., 210 F. Supp. 3d at 395 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  Reckless disregard, in turn, is defined by regulation as a "failure to make adequate inquiry into whether [the employer's] conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  The showing required to establish such reckless disregard is low, for a plaintiff need only demonstrate "that the employer knew or had reason to know that it was or might have been subject to the FLSA."  Padilla v. Sheldon Rabin, M.D., P.C., 176 F. Supp. 3d 290, 300 (E.D.N.Y. 2016) (quoting Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014)).

Plaintiff has simply alleged, in connection with the various causes of action, that defendants' conduct "was willful" and not in "good faith."  (See Compl. ¶¶ 54, 55, 59, 62, 68).  Courts are divided on whether such conclusory allegations are sufficient to establish the legal element of willfulness.  Compare Lopez v. Yossi's Heimishe Bakery Inc., No. 13 CV 5050, 2015 WL 1469619, at *8 (E.D.N.Y. Mar. 30, 2015) (holding that plaintiffs' allegations that defendants failed to pay them wages as required under the FLSA and NYLL were merely conclusory and therefore insufficient to establish willfulness under the FLSA); Solis v. Tally Young Cosmetics, LLC, No. 09 CV 4804, 2011 WL 1240341, at *5 (E.D.N.Y. Mar. 4, 2011), report and

19

recommendation adopted, 2011 WL 1240108 (E.D.N.Y. Mar. 30, 2011) (finding conclusory allegations insufficient to establish that the violations were willful), with Guaman v. Krill Contracting, Inc., No. 14 CV 4242, 2015 WL 3620364, at *5 (E.D.N.Y. June 9, 2015) (holding that plaintiff adequately pleaded that defendant's violations were willful where the complaint alleged that the defaulting defendants' failure to pay plaintiff overtime wages for hours worked beyond forty hours was willful); Herrera v. Tri-State Kitchen and Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (finding that even such conclusory allegations, coupled with a defendant's default, can serve to establish willfulness for purposes of extending the statute of limitations). Here, the allegations in the Complaint as a whole support the otherwise conclusory allegations of willfulness and satisfy plaintiff's burden.

The defendants may therefore be held liable under the FLSA for those violations which occurred on or after June 1, 2014—three years before the instant action was filed. Since plaintiff did not begin working for defendants until November 2015, it is clear that his claims all fall within the three year limitations period of the FLSA.

b. NYLL Limitations Period

Actions to recover damages stemming from violations under the NYLL must be brought within six years of the violation and do not require a showing of willfulness. NYLL § 663(3); Pest v. Bridal Works of New York, Inc., No. 16 CV 1523, 2017 WL 3393967, at *13 (E.D.N.Y. July 27, 2017). Therefore, defendants may be held liable for any violations that occurred on or after June 1, 2011, six years before the instant lawsuit was filed. However, since plaintiff's employment did not begin until 2015, it is clear that his claims fall within the NYLL statute of limitations.

20

**C. Damages**

    1. <u>Legal Standard</u>

    Having determined that the plaintiff has established that the defendants constitute a "single employer" for purposes of the FLSA and the NYLL, and that both defendants are liable for damages flowing from FLSA and NYLL violations occurring on or after November 9, 2015 and continuing until May 9, 2017, the Court now must determine whether plaintiff has established his damages to a "reasonable certainty." <u>See</u> <u>Gunawan v. Sushi Sake Restaurant</u>, 897 F. Supp. 2d at 83.  Although a defendant's failure to pay overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." <u>Gonzales v. Gan Israel Pre-Sch.</u>, No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014).  Courts will thus award damages under whichever statute would allow for greater recovery. <u>Id.</u>

    As noted <u>supra</u>, upon entry of a default, defendants are deemed to have admitted all well-pleaded factual allegations in the Complaint pertaining to liability. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158; <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing <u>United States v. Di Mucci</u>, 879 F.2d 1488, 1497 (7th Cir. 1989)); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65; <u>Deshmukh v. Cook</u>, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986).  However, plaintiff must still prove damages. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" <u>Levesque v. Kelly Commc'ns, Inc.</u>, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court entertains a motion for default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(b).  Courts possess discretion to determine the appropriate procedure by which to determine damages.  United States v. Myers, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment."  United States v. Myers, 236 F. Supp. 3d at 709 (citations and quotation marks omitted).

Defendants are in default and have failed to make any submission regarding this action. Thus, plaintiff's evidence on damages is undisputed.  The Court concludes that plaintiff's declarations and submissions as to the hours worked, rate of pay received, and other damages are sufficient bases upon which to calculate and recommend an award of damages.  Nonetheless, the Court has also considered the testimony of plaintiff Carlos Piedra at the October 3, 2017 Inquest Hearing.  (See generally Tr. at 6:19-11:17).

### a. Burden of Proving FLSA Damages

Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680,

687 (1946), superseded on other grounds by 29 U.S.C. § 251, et seq.).  The Supreme Court in

Anderson v. Mt. Clemens Pottery Co. noted, however, that "employees seldom keep . . . records

[of hours worked] themselves; even if they do, the records may be and frequently are

untrustworthy."  328 U.S. at 687.  By defaulting, defendants have "deprived the plaintiff of the

necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his

damages."  Santillan v. Henao, 822 F. Supp. 2d at 294.  The Supreme Court has held that "an

employee has carried out his burden if he proves that he has in fact performed work for which he

was improperly compensated and if he produces sufficient evidence to show the amount and

extent of that work as a matter of just and reasonable inference."  Tran v. Alphonse Hotel Corp.,

281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687),

overruled on other grounds, Slayton v. American Express Co., 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have concluded that where a defendant-

employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection

alone."  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise,

defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery

or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act."

Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28,

2006) (citing 29 U.S.C. § 211(c), which requires that an employer "make, keep, and preserve . . .

records of the persons employed by him and of the wages, hours, and other conditions and

practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL

619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-

shifting standard" where employers fail to comply with this statutory duty of record keeping).

b. Burden of Proving NYLL Damages

New York law also requires that employers keep various, detailed employment records. Like the FLSA, the NYLL requires that employers maintain employment records relating to employees' rates of pay, hours, and dates of work, among other information. See, e.g., N.Y. Lab. L. § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances"); N.Y. Lab. L. § 195(2) (requiring employers to notify employees prior to changing the day on which wages are paid); N.Y. Lab. L. § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages"); N.Y. Lab. L. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee").  Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the employer, upon whom the statute imposes a duty to maintain such information.  See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

Thus, under both federal and state law, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct."  Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002).  Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned.  See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84.

Here, defendants did not appear and therefore cannot meet their burden by providing the records they are required to maintain.  The only evidence available to support plaintiff's claims is plaintiff's own statements.  Given that defendants have not appeared in this action to challenge plaintiff's claims, the Court bases its recommendation on plaintiff's evidence as to hours worked and wages paid by defendants.

2. <u>Overtime Claims</u>

Plaintiff alleges violations of the FLSA and NYLL based on defendants' failure to pay overtime for any hours worked over 40 in a week.

Under both the FLSA and NYLL, an employee is entitled to overtime pay, calculated at one and one-half times the employee's regular hourly rate, for hours worked in excess of 40 in one work week.  <u>See</u> 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. L. § 663(3); 12 N.Y. C.C.R.R. § 146-1.4.  The method for calculating overtime under both the FLSA and NYLL is the same.  Even if the plaintiff is owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to recover double damages.  <u>See</u> <u>Janus v. Regalis Constr., Inc.</u>, No. 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012), <u>report and recommendation adopted</u>, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater.  <u>See</u> 29 U.S.C. § 207; 29 C.F.R. § 778.107.  New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA.  12 N.Y. C.C.R.R. § 142-2.2.  New York regulations allow "premium pay" for a contractual weekly period to be credited towards overtime pay due.  N.Y. C.C.R.R. § 146-3.5.  However, since defendants have not answered, the

Court has no basis to determine that there was a "premium pay" contractual arrangement that would allow the Court to credit any portion of plaintiffs' weekly pay towards their overtime wages owed.

The Code of Federal Regulations explains that the term "regular rate of pay" should be interpreted to mean the higher of the employee's hourly rate and minimum wage under either state or federal law: "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5; see Santana v. Latino Express Restaurants, Inc., No. 15 CV 4934, 2016 WL 4059250, at *4 (S.D.N.Y. July 28, 2016) (calculating overtime wages due to plaintiff under both the FLSA and NYLL by using the state minimum wage rate: "During Plaintiff's employment at the Restaurant, the New York minimum wage rate was $8.75 per hour. Plaintiff's overtime rate was one and one-half times her normal wage rate of $8.75, or $13.125"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011) (explaining that "[u]npaid overtime wages are calculated by multiplying the New York minimum wage rate or the FLSA minimum wage rate, whichever is higher, by 0.5 to determine the additional amount owed per hour over 40 hours worked"). Under New York regulations, the "regular rate of pay" for employees in the hospitality industry, which includes restaurant employees, see N.Y. C.C.R.R. 146-3.1, is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee

during the work week." (N.Y. C.C.R.R. 146-3.5).[8]

Thus, by dividing Piedra's weekly earnings during each period by 40 hours, the Court finds that Piedra's regular hourly rate of pay was $20.00 during the period from November 9, 2015 until May 9, 2016, and $22.50 from May 10, 2016 until January 31, 2017. The Court divided Piedra's weekly pay of $800.00 and $900.00 for each respective period by 40 hours, the lesser of 40 hours and the actual number of hours Piedra worked each week. See N.Y. Lab. L. § 652 (1). For the period February 1, 2017 until May 9, 2017, plaintiff was paid $13.00 an hour and worked 58 hours per week. Thus, given that defendants have declined to participate in these proceedings and plaintiff's statement as to his wages and hours worked have not been challenged, the Court credits Piedra's statements, see Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84, and finds that Piedra is entitled to recover overtime wages under the NYLL for the entire period of his employment at the following overtime rates: $30 per hour from November 9, 2015 until May 9, 2016; $33.75 from May 10, 2016 until January 31, 2017; and $18.50 from February 1, 2017 until May 9, 2017.

Using the time periods and rates of pay set forth above, plaintiff is entitled to damages for unpaid overtime wages as follows:

---

[8] By contrast, the regular rate of pay for employees in non-hospitality industries is found by dividing the total amount of weekly pay by the actual number of hours worked.

**Table 1: Piedra's Overtime Wages**

| Period | Hourly Wage Rate Paid | Overtime Wage Rate | Hours of Overtime Per Week | Number of Weeks in Period | Overtime Owed for the Period |
|---|---|---|---|---|---|
| 11/9/15 – 5/9/16 | $20.00 | $30.00 | 48 | 26 | $37,440.00 |
| 5/10/16 – 1/31/17 | $22.50 | $32.75 | 48 | 38 | $12,576.00 |
| 2/1/17 – 5/9/17 | $13.00 | $18.50 | 18 | 14 | $4,662.00 |

**TOTAL OVERTIME OWED:** **$54,678.00**

Accordingly, the Court respectfully recommends that plaintiff Piedra be awarded $54,678.00 in unpaid overtime wages.

3. NYLL Spread of Hours Pay

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day during which that employee works more than ten hours. 12 N.Y. C.C.R.R. § 146-1.6(a). That compensation is calculated at the applicable minimum wage "regardless of a given employee's regular rate of pay." Id. § 146-1.6(d).

Plaintiff Piedra alleges that between November 9, 2015 and January 31, 2017, he worked seven days per week and worked more than ten hours per day on every day except Monday. (See Compl. ¶¶ 26-27; Piedra Decl. ¶¶ 3-4). Piedra also claims that between February 1, 2017 and May 9, 2017, he worked six days per week and worked more than ten hours a day on each of those six days. (Compl. ¶ 28; Piedra Decl. ¶ 5).

As defendants have failed to introduce any evidence to the contrary, the Court has credited the undisputed allegations contained in the Complaint, plaintiff's Declaration, and documents filed in support of the motion for default to calculate spread of hours damages. To determine the spread of hours pay owed to plaintiff for each period, the Court multiplied the

minimum wage rate under the NYLL for the relevant period by the number of days plaintiff worked over ten hours and then multiplied that figure by the number of weeks in the period.

The Court therefore respectfully recommends that plaintiff be awarded spread of hours wages in the following amounts:

**Table 2a:  Piedra's Spread of Hours Wages**

| Period | NYLL Min. Wage | No. of Days Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 11/9/15 – 12/30/15 | $8.75 | 7 | 7.4 | $453.25 |
| 12/31/15 – 12/30/16 | $9.00 | 7 | 52 | $3,276.00 |
| 12/31/16 – 1/31/17 | $9.70 | 7 | 4.6 | $312.34 |
| 2/1/17 – 5/9/17 | $9.70 | 6 | 14 | $814.80 |
| | | | **Total Spread of Hours Pay Owed:** | **$4,856.39** |

Accordingly, the Court respectfully recommends that plaintiff Piedra be awarded a total of $4,856.39 in unpaid spread of hour wages.

4. <u>Required Notifications Under the NYLL</u>

Plaintiff also seeks damages due to defendants' alleged failure to issue written pay stubs or notices of plaintiffs' rate of pay, in violation of N.Y. Lab. L. §§ 195(1)(a) and 195(3). (Compl. ¶¶ 63-69).  Plaintiff claims that he is entitled to damages for violations of each provision of Section 195, specifically Sections 195(1)(a) and 195(3), pursuant to Sections 198(1-b) and 198(1-d) of the NYLL.

a. <u>Rate of Pay Notifications Under NYLL § 195(1)(a)</u>

Section 195(1)(a) of the New York Labor Law provides that an employer must:

> provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the

following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay

NYLL § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3 (effective Apr. 9, 2011) (as amended by 2014 N.Y. Laws ch. 537 § 1); see also Franco v. Jubilee First Ave. Corp., No. 14 CV 7729, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016). This wage notice provision is enforced through Section 198(1-b). Section 198(1-b) provides that if an employee is not provided with the wage notice required by Section 195(1)(a) within ten days of his or her date of hire, the employee is entitled to recover statutory damages for the violation in the amount of $50 per day, up to a maximum of $5,000. NYLL § 198(1-b).

Plaintiff argues that he is entitled to statutory damages for defendants' violation of Section 195(1)(a) because he did not receive a wage notice within ten days of his hiring. (See Compl. ¶¶ 30, 63-69; Piedra Decl. ¶ 8).

The Court credits plaintiff's allegations and his Declaration. Thus, Piedra is entitled to fifty dollars per day that the violations continued, but not to exceed a total of $5,000. N.Y. Lab. L. § 198(1-b). Given the length of Mr. Piedra's employment, which greatly exceeded 100 days,

he is entitled to the full statutory maximum in place at the time of the violation, which is $5,000.00.

### b. Wage Statements Under NYLL § 195(3)

Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. L. § 195(3).  Section 198(1-d) provides the remedy for violations of the wage statement requirement, by allowing an employee to recover $250 for each work day that violations of the wage statement requirement continue, up to a maximum of $5,000.00.  See N.Y. Lab. L. § 198(1-d) (effective February 27, 2015).

It is clear that Piedra worked more than 20 work days after his first pay period, and he is therefore entitled to the maximum award of $5,000.00 for violations of Section 195(3).

### c. Summary of Recommended Damages for Violations of NYLL § 195

The Court therefore respectfully recommends that, for defendants' violations of the wage notice and wage statement requirements of Section 195 of the NYLL, Mr. Piedra be awarded a total of $10,000 in statutory damages.

### 5. Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiff seeks liquidated damages under both federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an

additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA.  Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260).  This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA."  Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)).  Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under the FLSA.

Similarly, under the NYLL, an employee is entitled to receive liquidated damages "equal to one hundred percent of the total amount of the wages found to be due," unless the employer provides a good faith basis for believing he or she was in compliance with the law.  N.Y. Lab. L. §§ 198(1-a), 663(1); Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 CV 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (citing Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 144 (2d Cir. 2013) (holding that, "[a]s of November 24, 2009, an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law'")).  In the absence of proof of a good faith basis, plaintiffs are entitled to recover liquidated damages "equal to one hundred percent of the total of such underpayments found to be due."  Gold v. N.Y. Life Ins. Co., 730 F.3d at 144 (holding that the amendments to the NYLL that went into effect on April 9, 2011, raising the amount of liquidated damages recoverable under the statute, could not be applied retroactively); see also N.Y. Lab. L. § 663(1).

Although the Court finds that plaintiff may be entitled to an award of liquidated damages under both the NYLL and the FLSA, the Court respectfully recommends that plaintiff not be awarded cumulative liquidated damages for any overlapping claims for the three-year period covered by FLSA.  The 2010 amendments to the NYLL resulted in a state statute that is, in all material respects, identical to the FLSA, and an award of liquidated damages under one satisfies the provision for liquidated damages in the other.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 61 (2d Cir. 2016) (analyzing the effects of the amendments to the NYLL); see also Pest v. Bridal Works of New York, Inc., No. 16 CV 1523, 2017 WL 3393967, at *16 (E.D.N.Y. July 27, 2017) (collecting cases).

Accordingly, because the law is clear that plaintiffs "may recover under the statute which provides the greatest amount of damages," Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 5637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)), report and recommendation adopted as modified, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (holding that where plaintiffs have prevailed under both state and federal law, "the law providing the greatest recovery will govern"), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012), the Court respectfully recommends that plaintiff be awarded liquidated damages under the NYLL.  The NYLL provides the greater recovery in liquidated damages for the plaintiff because it allows him to recover liquidated damages for all

wage claims (but not wage notice claims)[9] brought under the NYLL, including the spread of hours wages owed to plaintiff, whereas the FLSA only provides liquidated damages for claims brought under the FLSA—in this case, only the claims for unpaid overtime wages owed. Moreover, unlike the FLSA, the NYLL allows for the recovery of both liquidated damages and prejudgment interest.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

As described above, plaintiff Piedra is owed a total of $54,578.00 in unpaid overtime wages and $4,856.39 for the spread of hours claim.  Under the NYLL, the plaintiff is entitled to 100% of such damages as liquidated damages. Accordingly, it is respectfully recommended that plaintiff be awarded liquidated damages in the total amount of $59,434.39.

6.  Prejudgment Interest

Finally, plaintiff seeks to recover prejudgment interest on all damages awarded under the NYLL, calculated at a rate of 9% per year pursuant to New York law.  See N.Y. C.P.L.R. § 5004.  The Second Circuit has held that, because liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any damages for which liquidated damages are not awarded under the FLSA; prejudgment interest may not be awarded under the NYLL in addition to liquidated damages for

---

[9] See N.Y. Lab. L. § 198(1-a) (providing that an employee may recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the *wages found to be due*") (emphasis added); Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *23 & n.13 (E.D.N.Y. Sept. 22, 2017) (explaining that statutory damages for wage notice claims must be excluded from liquidated damages calculations) (R&R adopted by unpublished order); Tan v. Voyage Express, Inc., No. 15 CV 6202, 2017 WL 2334969, at *6-7 (E.D.N.Y. May 25, 2017) (excluding damages under the WTPA for wage notice violations from the liquidated damages calculation); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016) (same).

violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Here, because the Court has recommended that plaintiff receive damages only under the NYLL, plaintiff is entitled to prejudgment interest on:  (1) plaintiff's unpaid overtime wages and (2) plaintiff's spread of hour wages.  However, plaintiff is not entitled to prejudgment interest on amounts awarded under the Wage Theft Prevention Act.  See N.Y. Lab. L. §§ 195(1)-(3); see also Schalaudek v. Chateau 20th Street LLC, No. 16 CV 11, 2017 WL 729544, at *10-11 (S.D.N.Y. Feb. 24, 2017) adopted in part and modified on unrelated grounds by 2017 WL 1968677 (S.D.N.Y. May 11, 2017) (awarding prejudgment interest only on minimum wages and unlawfully withheld tips); Dominguez v. B S Supermarket, Inc., No. 13 CV 7247, 2015 WL 1439880, at *18–19 (E.D.N.Y. Mar. 27, 2015) (awarding prejudgment interest only on unpaid wages for which plaintiff was compensated under state law and not on damages awarded for defendants' failure to issue written notice of plaintiff's rate of pay in violation of NYLL § 195(3)).

Plaintiff has specified that prejudgment interest on his damages under the NYLL should run from August 8, 2016, which is midway between his first day of employment on November 9, 2015 and his last day of employment on May 9, 2017.  (See Mendez Decl. Ex. 4 at 4). Prejudgment interest under New York Law is governed by Section 5001 of the New York Civil Practice Law and Rules, which provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  Where, as here, violations of the NYLL occur over an extended period,

courts calculate prejudgment interest from a "single reasonable intermediate date."  N.Y.

C.P.L.R. § 5001(b).  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL

2022644, at *9 (S.D.N.Y. May 2, 2011) (observing that "[t]he plaintiffs have calculated

prejudgment interest from the midway point of each plaintiff's employment, which is a

reasonable approach").  Thus, the Court adopts plaintiff's proposed date of August 8, 2016 as a

reasonable intermediate date from which to compute interest.

The total damages owed to plaintiff for overtime and spread of hour wages is $59,534.39.

To calculate the per diem interest rate, the Court multiplies the statutory rate of 9% per annum by

the total damages award, (.09/365) x $59,534.39, which yields a per diem rate of $14.675.  Since

542 days have passed between the date selected for the calculation of prejudgment interest,

August 8, 2016, and the date of this Report and Recommendation, plaintiff is owed $7,953.85 in

prejudgment interest.

The Court therefore finds that plaintiff Piedra is owed prejudgment interest in the amount

of $7,953.85.

## D.  Attorney's Fees and Costs

Plaintiff seeks to recover an award of "reasonable attorney's fees and costs" (see, e.g.,

Compl. ¶¶ 3-4 ; Mendez Decl. ¶ 30, Ex. 5), pursuant to the applicable provisions of the FLSA

and the NYLL.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  In accordance with the

requirements established by the Second Circuit, see, e.g., Marion S. Mishkin Law Office v.

Lopalo, 767 F.3d 144, 148 (2d Cir. 2014); N.Y. State Ass'n for Retarded Children, Inc. v. Carey,

711 F.2d 1136, 1148 (2d Cir. 1983), plaintiff's counsel has submitted a Declaration, along with

contemporaneous billing records, setting forth the dates and amount of time during which

services were rendered, the hourly rate at which the services were charged, along with the name

of the attorney performing the work and a description of the services rendered. (See Mendez

Decl., Ex. 5.) Plaintiff also requests reimbursement for expenses incurred in connection with the

instant action. (See id.) Plaintiff has also submitted supplementary records, but not a supporting

declaration or other sworn document, which sets forth additional fees and costs incurred in

connection with this litigation. (See Supplemental Billing Records, Nov. 8, 2017, ECF No. 19).

1. Attorney's Fees

Courts employ the "lodestar" method in calculating reasonable attorneys' fees,

multiplying the number of hours reasonably spent by counsel on the matter by a reasonable

hourly rate. See, e.g., Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-

North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood

Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008). Although there is a "strong

presumption that this amount represents a reasonable fee," the resulting lodestar figure may be

adjusted based on certain other factors. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.

1999).

a. Reasonable Hourly Rate

In assessing whether legal fees are reasonable, the Court must determine the

"presumptively reasonable fee" for an attorney's services by looking to what a reasonable client

would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d at 183. To calculate the presumptively reasonable fee, a court must first

determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the

Second Circuit set forth the following factors to guide a court's inquiry into what constitutes a

reasonable hourly rate:

1) the time and labor required; 2) the novelty and difficulty of the

questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorney's fees.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation[.]

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).  In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, but also considers each attorney's degree of skill and the Court's own experience dealing with similar claims.

In this case, plaintiff was represented by the law firm of Hang & Associates, PLLC (the "Firm").  Plaintiff seeks an hourly rate of $400.00 for the work of Jian Hang, Esq., Principal

Attorney in the Firm, with 10 years of practice.[10]  (Mendez Decl. ¶ 33).  Approximately, 70% of Mr. Hang's time is spent on employment related issues, including representing employers and employees in wage and hour cases, as well as litigating claims of discrimination and breach of contract.  (Id. ¶¶ 33, 34).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with FLSA and NYLL cases, the Court finds that the rate of $400.00 per hour for Mr. Hang's work is at the upper range of the rates ordinarily awarded to partners in this district with more experience, which generally range from $300 to $450 per hour for partners. See, e.g., Saucedo v. On the Spot Audio Corp., No. 16 CV 00451, 2016 WL 8376837, at *18 (E.D.N.Y. Dec. 21, 2016), report and recommendation adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); Cortes v. Warb Corp., No. 14 CV 7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016), report and recommendation adopted, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016) (observing that, "[w]ithin this District, the following rates have been endorsed as reasonable: $300.00–$450.00 for partners, $200.00[–]$300.00 for senior associates, and $100.00[–]$200.00 for junior associates").

Given the prevailing rates in this District for partners, and having taken into account the middling quality of the written submissions in this case, the Court finds that a reasonable rate for Mr. Hang's work is $350.00 per hour.

---

[10] Paul Mendez, Esq., is the attorney who signed the majority of papers in this matter and who appeared at the Inquest Hearing.  Although plaintiff has included Mr. Mendez's time in the contemporaneous billing records, plaintiff has not submitted any information, by affidavit or otherwise, that would enable the Court to conduct the required inquiry with respect to charges attributable to Mr. Mendez.

b. Reasonable Number of Hours

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel.  See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).  The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case."  Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly."  Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and reducing plaintiffs' lawyer's hours by 40%).

As noted above, the Firm has submitted contemporaneous billing records, setting forth

the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided the services, along with a description of services performed.  In total, Mr. Hang billed for 11.2 hours of work.  (Mendez Decl., Ex. 5).

Mr. Hang billed 3.3 hours for meeting with the client and researching the defendants. (Id.)  He also billed 6.5 hours for various tasks:  "Research on the various claims under federal and New York state law, and draft the complaint.  Revise the complaint and draft summons, civil cover sheet and file the complaint in the court."  (Id.)  The remainder of his time relates to reviewing the case files, speaking with the client, and various case management activities.  (See id.)  A review of the Complaint suggests that it consists of boilerplate language with names and specifics added.  Courts in both the Southern and Eastern Districts of New York have "noted the boilerplate nature of the papers used by [another] firm and have reduced or excluded fees sought for hours purportedly spent drafting, finalizing, and filing the complaint."  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 CV 10234, 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016), report and recommendation adopted by 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (collecting cases).  Given the boilerplate nature of the Complaint, "it is difficult to imagine how a case that does not raise particularly novel or complex legal issues and required interaction with only [one] plaintiff[] in preparing the complaint . . . would require Plaintiffs' counsel to expend the time they claim."  Angamarca v. Pita Grill 7 Inc., No. 11 CV 7777, 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012).  Counsel also includes many administrative tasks in his block-billed entries, such as printing and filing papers with the Court.  Such tasks may not be billed at attorney rates, especially where the attorney seeks to bill at a partner rate.  The Court therefore reduces the allowable time for Mr. Hang from 11.2 hours to 8 hours.

In light of the reductions in rate and allowable time, the Court respectfully recommends that plaintiff be awarded attorney's fees in the amount of $2,800.00.  It is further recommended that plaintiff be allowed to submit a declaration with information regarding Mr. Mendez sufficient to enable the Court to determine the reasonableness of his hourly rate and number of hours billed.

2.  Costs

Plaintiff has also requested $893.80 in costs, including the filing fee in this district of $400.00 and the service of process fees of $193.80.  (See Mendez Decl., Ex. 5).  Plaintiff has not, however, attached an invoice for the process server.  Plaintiff also includes an interpreter fee of $300 on his attorneys' updated invoice, which is presumably for the cost of the interpreter at the Inquest Hearing.  (See Supplemental Billing Records at 2).

Pursuant to 28 U.S.C. § 1988, a prevailing party may recover certain costs, such as filing and service of process fees.  See Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001).  Section 1988 allows for recovery of a broader range of costs than 28 U.S.C. § 1920, permitting a party to recover those costs which are "ordinarily charged to clients in the legal marketplace."  Id.  Importantly, however, the party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery.  See, e.g., Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., No. 04 CV 2293, 2009 WL 5185808 at *9-10 (E.D.N.Y. Dec. 23, 2009) (reducing award of costs where certain costs were not properly documented); Rotella v. Board of Ed. of City of New York, No. 01 CV 434, 2002 WL 59106 at *5 (E.D.N.Y. Jan. 17, 2002) (declining to award costs which would ordinarily be recoverable under § 1988 because of plaintiff's failure to support demands with adequate documentation).

42

No receipts have been submitted for the filing fee or for the other expenses totaling $893.00.  While the Court takes judicial notice of the filing fee in this district, see Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013) (taking judicial notice of the filing fee for this court); Phillip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (same), the Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs.

Accordingly, the Court respectfully recommends that plaintiff be awarded $400.00 in costs, representing the filing fee for this Court, but that the remaining $493.00 requested for other costs be denied in the absence of supporting documentation.

CONCLUSION

In total, the Court respectfully recommends that plaintiff be awarded a total of $140,122.63, which includes $2,800.00 for attorney's fees and $400.00 for costs, as set forth in the chart below.

**Total Damages Owed to Plaintiff**

| Claim | Amount Owed to Plaintiff Piedra |
|---|---|
| Unpaid Overtime | $54,678.00 |
| Unpaid Spread of Hours | $4,856.39 |
| Wage Notice Damages | $5,000.00 |
| Wage Statement Damages | $5,000.00 |
| Liquidated Damages | $59,434.39 |
| Pre-judgment Interest | $7,953.85 |
| Attorney's Fees | $2,800.00 |
| Costs | $400.00 |
| **TOTAL** | **$140,122.63** |

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation promptly on each defendant by regular mail and by certified mail, return receipt requested, and

to file the return receipts on ECF.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      January 31, 2018

                                    /s/ Cheryl L. Pollak
                                Cheryl L. Pollak
                                United States Magistrate Judge
                                Eastern District of New York